**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:25-CV-60779-RUIZ/AUGUSTIN-BIRCH**


**SEAWORTHY CLUB, INC.,**

      **Plaintiff,**

**v.**

**VESSEL REBOOT**
*(EX: WATER HOG III),*
*a 2007 model 64' Viking sportfish*
*bearing Hull Identification*
*Number VKY64341H708 and U.S. Coast*
*Guard Official Number 1220195, her*
*engines, tackle, furniture,*
*furnishings, tender and*
*appurtenances, in rem, et al.,*

      **Defendants.**

_____/

**REPORT AND RECOMMENDATION ON MOTION FOR SUMMARY
JUDGMENT AND AMENDED MOTION TO DISMISS FOR LACK OF JURISDICTION**

This cause comes before the Court on Claimant Water Hog LLC and the *in rem* Defendant Vessel Reboot's ("the Vessel") Motion for Summary Judgment and Amended Motion to Dismiss for Lack of Subject Matter Jurisdiction. DE 100; DE 109. The Honorable Rodolfo A. Ruiz, II, United States District Judge, referred both Motions to the undersigned United States Magistrate Judge. *See* DE 110. Plaintiff Seaworthy Club, Inc. responded to Claimant and the Vessel's Motions, DE 107; DE 115, and Claimant and the Vessel filed replies. DE 108; DE 116. The Court held a hearing on both Motions on July 7, 2026. DE 121. Having carefully considered the record, the briefing, and the arguments made by counsel at the hearing, the Court **RECOMMENDS DENYING** Claimant and the Vessel's Motion for Summary Judgment [DE 100] and Amended Motion to Dismiss for Lack of Subject Matter Jurisdiction [DE 109].

## I. Background

Plaintiff brought this action to foreclose on a maritime lien it contends that it has for necessaries provided to the Vessel. DE 1. According to Plaintiff, Claimant owns the Vessel. *Id.* ¶ 10. In January 2022, Joseph Cammarata, a non-party, was the managing member of Claimant and authorized Eugene Kesselman to "arrange for the dockage, service and other *necessaries* for the Vessel." *Id.* ¶ 15. Although Mr. Kesselman did so, he was never paid. *Id.* ¶ 16. Later on, in February 2024, Mr. Kesselman authorized Plaintiff to arrange for "the dockage, service and other *necessaries* for the Vessel." *Id.* ¶ 17. Additionally, Mr. Kesselman assigned to Plaintiff the amount he was owed for "dockage, service and other *necessaries* provided to the Vessel." *Id.* ¶ 19. In total, Plaintiff claims that it is owed $245,422.14 for necessaries provided to the Vessel. *Id.* ¶ 22.

In response to Plaintiff's Complaint, Claimant and the Vessel have moved for summary judgment, DE 100, and to dismiss for lack of subject matter jurisdiction. DE 109. They premise both motions on the same set of arguments, c*ompare* DE 100, *with* DE 109, and the parties primarily dispute the significance of the facts, rather than the facts themselves. *Compare* DE 101 (Claimant and the Vessel's statement of material facts), *with* DE 106 (Plaintiff's statement of material facts). Claimant and the Vessel's Amended Motion to Dismiss also relies on matters outside of the Complaint, rendering their attack on subject matter jurisdiction a factual attack. *See Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003) ("Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings."). And given the Claimant and the Vessel's factual attack on subject matter jurisdiction, the Court may "consider extrinsic evidence such as testimony and affidavits" when determining whether subject matter jurisdiction exists. *Id.* As such, when analyzing the Amended Motion to Dismiss, the Court may consider the same evidence Claimant and the Vessel rely on for their Motion for Summary Judgment. Thus, the Court will analyze both Motions together.

2

## II. Analysis

Federal courts have original jurisdiction to hear "any case of admiralty or maritime jurisdiction." *Crimson Yachts v. Betty Lyn II Motor Yacht*, 603 F.3d 864, 868 (11th Cir. 2010) (quotation marks omitted). "An *in rem* suit against a vessel is distinctively an admiralty proceeding, and is hence within the exclusive province of the federal courts." *Id.* (quotation marks and ellipsis omitted). But in order to maintain an *in rem* admiralty proceeding, there must be a maritime lien. *Id.* ("An *in rem* admiralty proceeding requires as its basis a maritime lien.").

"A maritime lien is a special property right in a ship given to a creditor by law as security for a debt or claim, and it attaches the moment the debt arises." *Id.* (quotation marks omitted). "The Federal Maritime Lien Act, 46 U.S.C. §§ 31341–31343, grants maritime liens to particular persons based on their relationship to, or service of, a vessel." *Id.* "For example, the Act grants a maritime lien to a person providing necessaries to a vessel." *Id.* "Necessaries" are defined by statute as including "repairs, supplies, towage, and the use of a dry dock or marine railway." 46 U.S.C. § 31301(4). However, this is a "non-exhaustive list." *In re Aloha Racing Found., Inc.*, 257 B.R. 83, 89 (Bankr. N.D. Ala. 2000); *Bradford Marine, Inc. v. M/V Sea Falcon*, 64 F.3d 585, 589 (11th Cir. 1995) ("The word 'includes' in this definition was not intended to be exhaustive."). "The term [necessaries] has been liberally construed to include what is reasonably needed in the ship's business, such as goods or services that are useful to the vessel, keep her out of danger, and enable her to perform her particular function." *Bradford Marine*, 64 F.3d at 589 (citation and quotation marks omitted); *see also id.* ("Necessaries are the things that a prudent owner would provide to enable a ship to perform well the functions for which she has been engaged."(quotation marks omitted)).

Here, Claimant and the Vessel contend that no maritime lien ever arose. DE 100; DE 109. Therefore, they maintain that they are entitled to summary judgment on Plaintiff's maritime lien

foreclosure claim and that there is no *in rem* jurisdiction for this matter. DE 100; DE 109. To demonstrate why no maritime lien ever arose, Claimant and the Vessel explain and produce evidence of the following. On November 3, 2021, the Securities and Exchange Commission filed a civil action against several defendants, including Mr. Cammarata. At the time, he was Claimant's sole member and manager. The next day, a Judge in the Eastern District of Pennsylvania entered a temporary restraining order that froze Mr. Cammarata's assets and prohibited him from selling, disposing, pledging, or encumbering any of his assets. DE 109-2. Claimant and the Vessel maintain that, as of the date of the freeze order, Mr. Cammarata could not procure necessaries for the Vessel. DE 100 at 2; DE 109 at 3. Furthermore, when Mr. Cammarata had a detention hearing in the Southern District of Florida, Mr. Cammarata's business associate Mr. Kesselman was present at the hearing and heard about the freeze order. DE 100 at 4–7; DE 109 at 3–4. Claimant and the Vessel assert that Mr. Kesselman was likewise subject to the freeze order and could not procure necessaries for the Vessel. DE 100 at 7; DE 109 at 4.

The problem with Claimant and the Vessel's argument is that they cite no caselaw or authorities standing for the proposition that a freeze order, such as the one entered against Mr. Cammarata, operates as a legal bar to the procurement of necessaries. They rely solely on 46 U.S.C. § 31341(b),[1] which provides that a "person tortiously or unlawfully in possession or charge of a vessel has no authority to procure necessaries for the vessel." But there is no indication that the freeze order rendered Mr. Cammarata or Mr. Kesselman unlawfully in possession or charge of the Vessel. In fact, under the terms of the freeze order, Mr. Cammarata retained ownership of the Vessel. *See* DE 109-2 at 3–4 (requiring Mr. Cammarata to "hold and retain funds and other assets" and prevent any "withdrawal, sale, payment . . ., transfer, dissipation, assignment, pledge,

---

[1] During the hearing, Claimant and the Vessel's counsel confirmed that 46 U.S.C. § 31341(b) is the sole authority for their argument that freeze order prevented the creation of a maritime lien.

alienation, encumbrance, disposal, or diminution in value of any such funds or other assets"); *see also In re Protective Ord. on Intergroup Inv. Corp.'s Acct. at Mega Bank*, 790 F. Supp. 1140, 1141 (S.D. Fla. 1992) (explaining that a freeze order "does not definitively divest the ownership rights" of the party subject to the order).[2]

The Court is also not persuaded by Claimant and the Vessel's argument that Mr. Cammarata knew he needed permission before he could "pledge, encumber or spend any money on [the Vessel] or authorize others to do so on his behalf." DE 109 at 9. Claimant and the Vessel refer to a motion that Mr. Cammarata filed before the Pennsylvania District Court, in which he asked for "Immediate funding of [his] (illegally) frozen assets to secure and maintain what the government should have had a legal and fiduciary obligation to maintain (and not destroy)." DE 109-9 at 10–11. Mr. Cammarata went on to say that he "owns a 64' Viking Yacht that has also been sitting abandoned, in disrepair" and that "the SEC also refused funding for basic maintenance, but even the $50k required to sell it for $1.99M in March." *Id.* at 13. From this motion, it is apparent that Mr. Cammarata was seeking to have some of his funds unfrozen so he could pay for repair and maintenance of the Vessel, not that he was seeking permission from the Pennsylvania Court to have the Vessel maintained or repaired. And, in any event, Mr. Cammarata's view of what he could or could not do is not dispositive about the legal force of the freeze order. For the foregoing reasons, the freeze order entered against Mr. Cammarata did not prevent either him or Mr. Kesselman from procuring necessaries for the Vessel.

As one final matter, Claimant and the Vessel raise an additional argument for why no maritime lien ever arose in their Amended Motion to Dismiss. Specifically, they claim that Mr. Kesselman was a partner in Mr. Cammarata's "marine business," DE 109 at 10, and thus they

---

[2] The court in *In re Protective Order* did note that the freeze order at issue "remove[d] those assets from the third party's immediate control." 790 F. Supp at 1141–42. However, the freeze order at issue concerned money. There is no indication that the freeze order in this matter removed Mr. Cammarata's ability to control the Vessel.

maintain that Mr. Kesselman could not receive or assign a maritime lien against the Vessel for any necessaries he claims to have provided. *Id.* To support this position, Claimant and the Vessel cite *Sasportes v. M/V Sol de Copacabana*, 581 F.2d 1204, 1208 (5th Cir 1978), which explains that "[j]oint venturers cannot hold maritime liens because they are not 'strangers to the vessel,' *P.T. Perusahaan Pelayaran Samudera Trikora Lloyd v. Salzachtal*, 373 F. Supp. 267, 275 (E.D. N.Y. 1974), but rather occupy a position akin to that of the vessel's owner."

For subject matter jurisdiction purposes, it is not necessary for the Court to determine whether Mr. Kesselman was a joint venturer of the Vessel. Even if Mr. Kesselman was a joint venturer of the Vessel and could not himself obtain a maritime lien against the Vessel, Claimant and the Vessel do not argue or provide any evidence to demonstrate that Plaintiff was also a joint venturer and thus could not obtain a maritime lien for necessaries it claims to have provided to the Vessel. *See* DE 1 ¶¶ 17, 20 (Plaintiff's allegation that Mr. Kesselman authorized Plaintiff to provide necessaries to the Vessel and that Plaintiff did so); *see also id.* at 30–46 (necessaries Plaintiff claims to have provided for the Vessel). Therefore, at the very least, Plaintiff could obtain a maritime lien for necessaries provided to the Vessel,[3] even if Mr. Kesselman could not as a joint venturer. And if Plaintiff could obtain a maritime lien for necessaries provided to the Vessel, then that is a sufficient basis for subject matter jurisdiction. *See Crimson Yachts*, 603 F.3d at 868 ("An *in rem* admiralty proceeding requires as its basis a maritime lien.").

### III. Recommendation

For the foregoing reasons, the Court **RECOMMENDS DENYING** Claimant and the Vessel's Motion for Summary Judgement [DE 100] and Amended Motion to Dismiss [DE 109].

---

[3] If Mr. Kesselman was a joint venturer of the Vessel, as Claimant and the Vessel posit, then he would have the presumed authority to authorize Plaintiff to provide necessaries for the Vessel. *See* 46 U.S.C. § 31341(a) (listing the individuals with presumed authority to procure necessaries for a vessel).

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(a). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2014).

**DONE AND SUBMITTED** in Chambers at Fort Lauderdale, Florida, this 24th day of July, 2026.

_____
PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE